IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DANIEL BOYD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:16-CV-68-WKW |
| | ) | (WO) |
| TOWN OF HAYNEVILLE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On March 21, 2017, the Magistrate Judge entered a Recommendation. (Doc. # 54.) Defendants Kelvin Mitchell and the Town of Hayneville filed timely objections. (Doc. # 57; Doc. # 58.) The court has conducted an independent and de novo review of those portions of the Recommendation to which objection is made. *See* 28 U.S.C. § 636(b).

## I.  ANALYSIS[1]

### A.  Defendant Mitchell's Objections

The Magistrate Judge concluded that Defendant Mitchell does not have state agent or discretionary function immunity from Plaintiff's state law malicious

---

[1] The standard of review on summary judgment and the facts underlying Plaintiff's claims will not be restated here because, for purposes of evaluating the summary judgment motion, the facts and relevant standard of review were adequately described in the Recommendation. (Doc. # 54 at 2-14.) The court is mindful that, on summary judgment, conflicting evidence and factual inferences must be considered in the light most favorable to Plaintiff, the nonmovant. *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000).

prosecution claim arising out of a warrant Defendant Mitchell procured on April 17, 2014.[2]  In reaching this conclusion, the Magistrate Judge reasoned that, under *Ex parte Harris*, when there is no dispute that an officer is engaged in a discretionary function with respect to a malicious prosecution claim, the concept of arguable probable cause is irrelevant to the immunity analysis.  Defendant Mitchell argues that, under *Harris* and an earlier Alabama Supreme Court case, *Borders v. City of Huntsville*, 875 So. 2d 1168, 1180 (Ala. 2003), he is immune from Plaintiff's state law malicious prosecution claim so long as he had arguable probable cause to obtain the warrant for Plaintiff's arrest.

Before analyzing Defendant Mitchell's argument, it may be helpful to review the burden-shifting nature of state agent and discretionary function immunity under Alabama law.  First, Defendant Mitchell must demonstrate that Plaintiff's claims arise from Defendant Mitchell's exercise of a function that would entitle him to immunity, *i.e.*, that he was acting as a state agent "'exercising judgment in the enforcement of the criminal laws of the state,'" or, in other words, engaged in a discretionary function in the capacity of a peace officer.  *Harris*, 216 So. 3d at 1209 (quoting *Hollis v. City of Brighton*, 950 So. 2d 300, 309 (Ala. 2006).  Although there

---

[2] Plaintiff asserted three different state law malicious prosecution claims, each arising out of Chief Mitchell's procurement of a different warrant.  Plaintiff did not object to the Magistrate Judge's recommendation that summary judgment be granted as to the state law malicious prosecution arising out of the other two warrants.

are other ways to demonstrate that a police officer is engaged in a discretionary function, in cases of false arrest, false imprisonment, and malicious prosecution, the officer may do so by showing that he or she had "arguable probable cause" to make an arrest. *Borders*, 875 So. 2d at 1179-80.

In this case, there is no dispute that, with respect to the conduct giving rise to Plaintiff's claims, Defendant Mitchell was engaged in a discretionary function that would entitle him to immunity. Therefore, the burden shifts to Plaintiff to demonstrate that a recognized exception to state-agent immunity applies – in this case, that Defendant Mitchell acted willfully, fraudulently, in bad faith, beyond his authority, or under a mistaken impression of the law. *Harris*, 216 So. 3d at 1209.

At least in cases of false arrest,[3] even when a plaintiff demonstrates that an officer acts willfully, maliciously, fraudulently, or in bad faith, a defendant police officer can negate the applicability of the immunity exception by demonstrating the existence of "arguable probable cause." *Id*. at 1213-14. As will be discussed, *infra*, the Alabama Supreme Court in *Harris* held that the "arguable probable cause standard" gives rise to immunity in cases of false arrest, but, without explanation, the court in *Harris* did not discuss arguable probable cause in its analysis of state

---

[3] The Alabama Supreme Court in *Harris* held that the "arguable probable cause standard" gives rise to immunity in cases of false arrest, but, without explanation, the court in *Harris* did not discuss arguable probable cause in its analysis of state agent or discretionary function immunity in the context of a separate malicious prosecution claim.

agent or discretionary function immunity in the context of a separate malicious prosecution claim. Defendant Mitchell's objection necessitates consideration of whether arguable probable cause negates the malicious conduct exception to state agent and discretionary function immunity, and, if so, whether the undisputed evidence establishes that Defendant Mitchell had arguable probable cause to obtain the April 17, 2014 warrant.

### 1. *Borders v. City of Huntsville*

In *Borders*, the Alabama Supreme Court considered an officer's argument that he was immune from numerous state law claims, including a claim for malicious prosecution. 875 So. 2d at 1171 (listing the plaintiff's state law claims, including malicious prosecution); *id.* at 1177 (introducing the defendant's argument that "all of [the plaintiff's claims were] barred by the discretionary function immunity afforded to peace officers"). The Alabama Supreme Court distilled the dispute over the applicability of immunity to the following issue: "whether a peace officer making a warrantless arrest on a charge based upon conduct the officer witnessed is entitled to discretionary-function immunity in a subsequent civil action after the arrestee is acquitted." *Id.* at 1179.

The *Borders* court noted that discretionary function immunity and state agent immunity are withheld if the defendant officer acted with willful or malicious intent or in bad faith, but this exception to immunity was inapplicable because the plaintiff

contended only that the officer's conduct was neglectful, careless, or unskillful.[4] *Id.* at 1178. Rather than focus on whether proof of actual malice could rebut any showing that defendant was entitled to qualified immunity, the *Borders* court focused its inquiry on whether the defendant met the threshold requirement for demonstrating the applicability of immunity in the first place by showing that "he was performing a discretionary function with respect to the incident in question." *Id.* The *Borders* court held that the defendant could meet the burden of demonstrating that he was engaged in a discretionary function by showing that he had arguable probable cause for the arrest, *Id.* at 1179-80, but that material factual disputes concerning the existence of arguable cause precluded a finding as a matter of law that the officer was engaged in a discretionary function when he arrested the plaintiff. *Id.* at 1181 ("[W]e cannot determine, as a matter of law, that [the

---

[4] The *Borders* plaintiff did not necessarily abandon the malicious conduct element of his malicious prosecution claim when he conceded that he had no grounds to argue an exception to immunity on the basis of malice, bad faith, or willfulness. Legal malice, as is required to satisfy the elements of a claim for malicious prosecution, "can be inferred from the lack of probable cause." *Ex parte Tuscaloosa Cty.*, 796 So. 2d 1100, 1107 (Ala. 2000). However, "malice in law, or legal malice, for purposes of a malicious-prosecution claim, is not sufficient to defeat a state agent's defense of discretionary-function immunity." *Id.* Rather, to overcome discretionary function or state-agent immunity on the basis of malicious, bad faith, or willful conduct, the plaintiff was required to prove malice in fact, or actual malice, by demonstrating that the defendant's conduct was "'so egregious as to amount to willful or malicious conduct engaged in in bad faith,'" such as by showing that the defendant bore "'personal ill will against the [plaintiff] and that he maliciously or in bad faith arrested him solely for purposes of harassment." *Id.* (quoting *Couch v. City of Sheffield*, 708 So. 2d 144, 153–54 (Ala.1998), abrogated on other grounds by *Ex parte Cranman*, 792 So.2d 392 (Ala. 2000)). The plaintiff in *Borders* presented no evidence of actual malice. *Borders*, 875 So. 2d at 1171.

defendant] was engaged in a discretionary function when he arrested [the plaintiff], that is, that [the defendant] had arguable probable cause in that officers of reasonable competence and with the same knowledge would disagree as to whether probable cause existed."); *Id*. at 1182 (holding that the factual dispute "preclude[d] a determination as to whether [the defendant] was engaged in a discretionary function and instead presented a jury question").

### 2.    *Ex parte Harris*

In *Harris*,[5] the Alabama Supreme court, citing *Borders*, applied the concept of arguable probable cause in determining whether a police officer was immune from a state law claim of false arrest.  Despite the citation to *Borders*, a significant distinction exists between the *Harris* court's use of the concept of arguable probable cause and the *Borders* court's use of the concept.  Unlike in *Borders*, the *Harris* court did not invoke the concept of arguable probable cause in relation to the defendant officer's initial burden to demonstrate that he was engaged in a discretionary function when he placed the plaintiff under arrest.  216 So. 2d at 1213-14.

In *Harris*, the initial discretionary function analysis concerned the plaintiff's argument that the defendant officer had no authority to make an arrest for the

---

[5] In a coincidence bearing no real relevance to this case, Defendant Mitchell participated in the alleged false arrest at issue in *Harris* and was the officer who made the determination to arrest the plaintiff.  216 So. 2d at 1205-06.

misdemeanor of selling alcohol without a license because the defendant officer did not personally witness the unlawful sale of alcohol. Rejecting the plaintiff's argument, the *Harris* court found that sufficient suspicious circumstances occurred within the defendant officer's view to give him the authority to make the arrest. 216 So. 2d at 1209-1212. Therefore, the court concluded that the defendant officer "satisfied his initial burden of demonstrating that at the time of the incident made the basis of [the plaintiff's] claims [the defendant officer] was engaged in a law-enforcement function for which State-agent immunity would be available under § 6–5–338(a) and *Ex parte Cranman*, as modified by *Hollis* [*v. City of Brighton*, 950 So. 2d 300, 309 (Ala. 2006)]." *Id*. at 1209.

Thus it was that, without considering whether arguable probable cause established that the defendant officer was engaged in a discretionary function, the *Harris* court turned to whether, with respect to the plaintiff's false arrest claim, the plaintiff met his burden to establish the malicious conduct exception to state agent/discretionary function immunity. Specifically, the *Harris* court held that undisputed evidence establishing "arguable probable cause" precluded a finding that the defendant officer acted "willfully maliciously, or in bad faith so as to remove him from the umbrella of state agent immunity." *Id*. at 1214.

Following this holding, the court stated: "Although we recognize that [the plaintiff] has presented evidence indicating that [the defendant officer] held some

personal animosity toward her and that he had a competing financial interest, the fact remains that [the Defendant officer] had probable cause to arrest [the plaintiff]." *Id.* Following on the heels of the court's reliance on arguable probable cause, the reference to "probable cause" introduces some ambiguity, but does not necessarily change the preceding holding that arguable probable cause eliminates the malicious conduct exception to immunity. Any ambiguity is easily resolved if the court's statement is read as making the larger point that, *even if evidence of malice exists*, the immunity exception for malicious conduct is unavailable if the arrest was objectively valid, or if an objective officer would have had reason to believe the arrest was valid.[6] Otherwise, an officer could be deprived of immunity simply on the mere basis of his subjective feelings or motives toward the plaintiff, while an objective, unbiased officer with the same knowledge and in the same circumstances would be immune for claims arising out an otherwise identical arrest.

After concluding that the malicious conduct exception did not deprive the defendant officer of state agent/discretionary function immunity from plaintiff's false arrest and false imprisonment claims, the *Harris* court proceeded to consider

---

[6] As the *Harris* court noted, probable cause exists in cases of false arrest and false imprisonment "if the facts and circumstances within the officer's knowledge and of which he had reasonable trustworthy information are sufficient to warrant a man of reasonable caution in the belief that an offense is or has been committed." *Id.* at 1213 (citation and quotation marks omitted). Arguable probable cause exists if "reasonable officers in the same circumstances and possessing the same knowledge as [the arresting officer] could have believed that probable cause existed to arrest the Plaintiff." *Id.* Thus, both arguable cause and actual probable cause focus on whether a reasonable officer would have been justified in making the arrest.

immunity in the context of the plaintiff's malicious prosecution claim. The *Harris* court noted that, to prevail on an Alabama state law claim of malicious prosecution, the plaintiff must demonstrate, among other things, that the arrest was initiated with malice and without probable cause. *Id.* at 1214. For purposes of proving the elements of a malicious prosecution claim, but not for the purpose of establishing the malice exception to immunity, malice can be inferred from lack of probable cause. *Id.* at 1215. To establish the malicious conduct exception to immunity on a malicious conduct claim, a plaintiff must demonstrate that the defendant's conduct was in fact so egregious as to amount to malicious, willful, or bad faith conduct, such as by showing that the defendant had personal ill will against the plaintiff and that the defendant acted solely for the purpose of harassment. *Id.* The *Harris* court noted facts tending to indicate that the defendant officer had probable cause for the arrest. Then, citing *Borders*, the court concluded that, "because [the defendant officer] had probable cause to initiate a judicial proceeding against [the plaintiff] and because he did so without malice, he is immune from suit on [the plaintiff's] malicious prosecution claim under the doctrine of State-agent immunity set forth in *Ex parte Cranman*."[7] *Id.*

---

[7] At first glance, *Harris* court might appear to hold that, because the undisputed facts established that the essential elements of malicious prosecution were absent (malice and probable cause), immunity existed. The *Harris* court expressly noted the difference between the type of malice required to prove the elements of the claim (legal malice) and the type of malice required to overcome an immunity defense (actual malice). The *Harris* court also expressly recognized that factual issues existed as to whether the defendant officer acted with *actual* malice, thus

The Magistrate Judge concluded that, because the *Harris* court did not discuss arguable probable cause in the context of negating the malicious conduct exception to immunity on a malicious prosecution claim, the *Harris* court "implicitly held that the arguable-probable-cause standard does not apply to malicious prosecution claims." (Doc. # 54 at 50 n.15.) As Defendant Mitchell points out, in the absence of any explanation from the *Harris* court itself why arguable probable cause was not discussed in the context of the malicious prosecution claim, it is not necessary to read *Harris* so narrowly. After all, the *Borders* court considered arguable probable cause in the context of a malicious prosecution claim (albeit at a different stage of the immunity analysis), and *Harris* contains no express statement of intent to abrogate *Borders*.

---

appearing to contradict the conclusion that undisputed evidence established that the defendant officer was immune because he acted without malice. *Id.* at 1215. ("As mentioned above, [the plaintiff] presented some evidence indicating that [the defendant officer] held some personal animosity toward her and that he had a competing financial interest, but that evidence does not alter the fact that he had probable cause to initial proceeding against her, given his knowledge of the facts and circumstances giving rise to that proceeding."). For resolving the issues before this court, it is not necessary to resolve this potential conflict in the *Harris* court's discussion of immunity in the context of a malicious prosecution claim. It entirely plausible, however, that, in noting the existence of evidence of the defendant officer's subjective malice, the court was merely reiterating that the maliciousness exception to immunity is negated, and immunity exists, if the defendant officer was objectively justified in obtaining a warrant or making the arrest, regardless of the officer's subjective feelings or motives. Further, it is also plausible that, because the officer was objectively justified in making the arrest, the court may not have found it necessary to consider whether the malicious conduct exception to immunity is negated if an officer is merely *arguably* justified in making an arrest.

It may be that, in *Harris*, the court did not discuss the issue of probable cause in the context of the malicious prosecution claim because the parties did not raise the issue. Alternatively, it may be that, in determining that probable cause existed in the context of the malicious prosecution claim, the *Harris* court found no need to address the existence of arguable probable cause. Whenever probable cause exists, arguable probable cause also necessarily exists[8] (although the reverse is not necessarily true). Therefore, under *Harris's* holding that arguable probable cause negates the malicious conduct exception to immunity, any time probable cause exists, the maliciousness exception to immunity will not apply. Otherwise, despite the existence of an objective basis for an officer's actions, the officer would lose state agent and discretionary function immunity merely because of the officer's personal motives and attitude toward the plaintiff during the arrest, even if an unbiased officer would have immunity for making the same arrest under the same circumstances.

Accordingly, at Defendant Mitchell's urging, and in accordance with *Borders* and *Harris*, the court will apply the concept of arguable probable cause to the immunity analysis of the state law malicious prosecution claim arising out of the April 17, 2014 warrant.[9]

---

[8] *See supra*, note 6 (defining probable cause and arguable probable cause).

[9] Moreover, in this case, it is unnecessary to choose exclusively between the Magistrate

### 3.    *Applying the Concept of Arguable Probable Cause*

As the Magistrate Judge correctly noted, it is undisputed that Defendant Mitchell met threshold requirement for demonstrating the applicability of immunity on the state law malicious prosecution claim by showing that "he was performing a discretionary function with respect to the incident in question." *Borders*, 875 So. 2d at 1178.  Accordingly, unlike in *Borders*, it is not necessary to consider whether undisputed evidence of arguable probable cause entitles Defendant Mitchell to judgment as a matter of law that he was performing a discretionary function when he swore out the April 17, 2014 warrant.

In his objection, Defendant Mitchell does not challenge the Magistrate Judge's conclusion (Doc. # 54 at 53-55) that, viewed in the light most favorable to Plaintiff, the disputed facts reasonably support a finding that, in obtaining the April 14, 2017 warrant, Defendant Mitchell engaged in malicious or bad faith conduct sufficient to trigger the maliciousness exception to state agent/discretionary function immunity.[10]  However, using *Harris's* approach to "the concept of arguable probable

---

Judge's approach and the approach urged by Defendant Mitchell.  The ultimate outcome of the state agent/discretionary function immunity analysis is the same under either approach because, for reasons stated in Part I.A.3. of in this memorandum opinion, material factual disputes as to both probable cause and arguable probable cause preclude summary judgment on immunity grounds.

[10] As the Magistrate Judge correctly found, the record contains disputed facts that, viewed in the light most favorable to Plaintiff, would establish that Chief Mitchell's conduct was "'so egregious as to amount to willful or malicious conduct or conduct engaged in in bad faith'" and, in particular, that Defendant Mitchell had "'a personal ill will against the [plaintiff] and that he maliciously or in bad faith arrested him solely for purposes of harassment.'"  *Harris*, 216 So. 2d

cause," even in the face of evidence that the defendant acted with actual malice, the maliciousness exception to immunity is inapplicable if arguable probable cause exists. *Id.* at 1213-14.

In analyzing Plaintiff's § 1983 malicious prosecution claim, the Magistrate Judge found that the uncontradicted evidence establishes arguable probable cause. As the Magistrate Judge noted, the definition of arguable probable cause used in *Borders* and *Harris* is the same as that used by the Eleventh Circuit in determining the applicability of qualified immunity in § 1983 cases.[11] (Doc. # 54 at 47.) Defendant Mitchell argues that arguable probable cause exists for purposes of the state law malicious prosecution claim for the same reasons that the Magistrate Judge concluded arguable probable cause exists in the context of the § 1983 malicious prosecution claim. Accordingly, at Defendant Mitchell's invitation, the court will consider the validity of the Magistrate Judge's conclusion that, as a matter of law based on undisputed evidence, Chief Mitchell had arguable probable cause to obtain the April 17, 2014 warrant against Plaintiff for reckless endangerment of the female students at Hayneville Middle School.

---

at 1214 (quoting *Ex parte Tuscaloosa Cty.*, 769 So. 2d at 1107) (defining the level of malicious conduct needed to overcome the discretionary function immunity defense in the context of a malicious prosecution claim).

[11] *See Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 741 (11th Cir. 2010) ("The Alabama Supreme Court has applied the same 'arguable probable cause' standard utilized in this Court's federal qualified immunity cases for determining whether a city police officer receives state-agent immunity for his role in an arrest. *Borders*[, 875 So. 2d at 1180].");*Harris*, 216 So. 2d at 1213 (quoting the definition of arguable probable cause used in *Borders*).

In the absence of probable cause, arguable probable cause exists if "'officers of reasonable competence in the same circumstances [as the defendant officer] and with the same knowledge would disagree as to whether probable cause existed.'" *Harris*, 216 So. 2d at 1213 (quoting *Borders*, 875 So. 2d at 1179). On the basis of the following facts, the Magistrate Judge found no factual dispute as to the existence of arguable probable cause: (1) after the student reported the assault at 10:00 a.m., the janitor remained on Hayneville Middle School grounds until 1:30 p.m. the same day; (2) the janitor entered the school counselor's office where the school counselor was meeting with the student immediately following the incident; (3) Defendant Mitchell testified that he subjectively believes Plaintiff returned the janitor to Hayneville Middle School after the day of the assault; and (4) the April 17, 2014 warrant was issued by a neutral magistrate. (Doc. # 54 at 43-44.) However material factual disputes exist as to each of the four reasons given by the Magistrate Judge for finding arguable probable cause at the summary judgment stage.

As to the Magistrate Judge's first reason for finding probable cause, competing factual inferences may be drawn from the fact that the janitor remained on school grounds until approximately 1:30 p.m. after the student reported the assault at 10:00 a.m.[12] As Defendant Mitchell noted in his summary judgment brief

----

[12] According to the school's record of the investigation, the guidance counselor reported the incident to the principal at 10:15 a.m. on the day of the assault. (Doc. # 41-1 at 24.)

(Doc. # 42 at 2-3), Plaintiff was not notified of the incident until the school principal called "around lunchtime"[13] on the day of the assault. (Doc. # 41-1 at 21-22; Doc. # 41-14 at 8-9.) Plaintiff testified that, immediately upon notification of the incident, he instructed the principal to "collect all [the] information," including a statement from the janitor, and then bring the janitor and the guidance counselor to Plaintiff's office. (Doc. # 41-1 at 21-23.) By the time the principal notified Plaintiff of the incident, the principal already had separated the janitor from the students by requiring the janitor to stay in the principal's office, and, for at least some part of the time after notifying Plaintiff of the incident, the principal was personally interviewing the janitor. (Doc. # 41-1 at 21-22). The principal conducted the requested interviews and arrived at Plaintiff's office with the janitor "around" 1:00 p.m. or "1:30-ish" that day. (Doc. # 41-1 at 21; Doc. # 41-14 at 8.) It is undisputed that Plaintiff's office is not on the grounds of Hayneville Middle School. When Plaintiff released the janitor from his office, he instructed the janitor not to return to school property. (Doc. # 41-1 at 29.)

Thus, approximately one or two hours passed between the time Plaintiff was notified of the incident and the time the janitor left Hayneville Middle School to travel to Plaintiff's office. (Doc. # 41-1 at 21-23.) Defendant Mitchell cites no

---

[13] Plaintiff could not remember whether he was informed about the assault before, during, or after lunch. (Doc. # 41-1 at 21.)

evidence that, during that time, the janitor was unsupervised in the vicinity of students, or that Plaintiff's instructions to the principal placed students at risk of unsupervised contact with the janitor, or that Plaintiff had reason to believe that students were at risk during that time. The only fact that the Magistrate Judge identified to support the inference that the janitor's continued presence on school grounds might have posed a danger to the students is the fact that, when instructing the janitor to remain in his office, the principal locked the office door so that no one could enter the office and then returned to the counselor's office, which was located "three rooms down" from the principal's office. (Doc. # 41-14 at 7, 9.) The Magistrate Judge observed that locking the office door did not prevent the janitor from leaving the office despite the principal's instructions to remain there. (Doc. # 54 at 43.) However, the principal informed Plaintiff of the student's allegation against the janitor *after* instructing the janitor to remain in his office and locking the door. (Doc. # 41-14 at 6-7, 9, 20-22.) Accordingly, viewed in the light most favorable to Plaintiff, the fact that the principal instructed the janitor to stay in his office and then left to speak with the counselor does not arguably support a reasonable inference that that *Plaintiff* was responsible for the janitor remaining unsupervised in the principal's office for any period of time or that *Plaintiff* recklessly endangered the students at the school.

The record does not support the second reason the Magistrate Judge gave for a finding of arguable probable cause to conclude that Plaintiff endangered the Hayneville Middle School students: that the janitor entered the school counselor's office while the school counselor was meeting with the student immediately following the incident. It is undisputed that the janitor entered the counselor's office and was removed from it before Plaintiff was informed of the student's allegation of abuse. (Doc. # 41-14 at 6-7, 9, 20; Doc. # 41-9 at 6.) Accordingly, the janitor's entry into the counselor's office does not arguably support the conclusion that Plaintiff recklessly endangered the students at the school.

Material factual disputes exist as to the third basis of the Magistrate Judge's finding of arguable probable cause: specifically, the evidence conflicts as to whether Defendant Mitchell had any reasonable basis for a subjective belief that Plaintiff returned the janitor to Hayneville Middle School "a day or two" after the alleged incident. (Doc. # 41-2 at 32, 36.) As the Magistrate Judge noted (Doc. # 54 at 43), Defendant Mitchell formed this belief "based on an alleged discussion with [the guidance counselor]." (Doc. # 41-2 at 33, 36.) However, as Plaintiff pointed out in his summary judgment brief, the guidance counselor testified at her deposition that she never told Defendant Mitchell that the janitor returned to the school after the day of the incident. (Doc. # 41-9 at 10.)

In his deposition, Defendant Mitchell testified that he believed the janitor had been returned to the school because Plaintiff told the student's mother that he planned to place the janitor back at the school, but then, after the mother objected, Plaintiff decided to place the janitor at a different school that was outside Defendant Mitchell's jurisdiction.[14] (Doc. # 41-2 at 34-36.) Viewed in the light most favorable to Plaintiff, the information Defendant Mitchell received from the student's mother would not lead a reasonable officer to the conclusion that the janitor was in fact placed back Hayneville Middle School. Rather, drawing all inferences in Plaintiff's favor, the mother's information indicated that Plaintiff thought about placing the janitor at Hayneville Middle School but later changed his mind – *i.e.*, that the janitor *was not* returned to the school in Defendant Mitchell's jurisdiction.

Disputed facts also undercut the Recommendation's conclusion that a neutral magistrate's issuance of the April 17, 2014 warrant supports a finding of arguable probable cause. As the Magistrate Judge noted, "[t]he fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as [the Eleventh Circuit] sometimes put[s] it, in 'objective good faith.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *United*

---

[14] The April 17, 2014 warrant is not premised on the janitor's placement at the out-of-jurisdiction school, and Defendant Mitchell does not argue that placement at the out-of-jurisdiction school supports a finding of arguable probable cause.

*States v. Leon*, 468 U.S. 897, 922–923 (1984)). However, the issuance of a warrant by a neutral magistrate "does not end the inquiry into [the] objective reasonableness" of the officer's actions. *Id*. at 547. A warrant will not shield an officer from liability where "it is obvious that no reasonably competent officer would have concluded that a warrant should issue," *id*. (citation and internal quotation marks omitted), such as when the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit. *Leon*, 468 U.S. at 923.

The entire premise of Plaintiff's case is that, in obtaining the warrant against Plaintiff for recklessly endangering the students at Hayneville Middle School, Defendant Mitchell willfully or recklessly disregarded or omitted the fact that Plaintiff never returned the janitor to Hayneville Middle School. Despite Defendant Mitchell's subjective belief that the janitor returned to the school, substantial evidence establishes that the janitor did not return to the school, but that he was reassigned to another school outside Defendant Mitchell's jurisdiction. As previously discussed, Defendant Mitchell stakes his continuing belief to the contrary on his contention that the school counselor informed him that the janitor returned to the school, but the school counselor denies that she ever said such a thing to Defendant Mitchell. Neither the warrant nor the incident report that is the basis of the warrant supplies any additional facts that arguably could support a reasonable conclusion that Plaintiff placed the janitor at the school after the reported abuse,

thereby recklessly endangering the students at the school.[15]  Further, as the Magistrate Judge noted, substantial evidence exists to support the conclusion that Defendant Mitchell "knew, or at least suspected" that he had no probable cause to arrest Plaintiff.  (Doc. # 54 at 53.)  Viewed in the light most favorable to Plaintiff, substantial evidence supports the conclusion that Defendant Mitchell recklessly or willfully disregarded the fact that Plaintiff did not reassign the janitor to Hayneville Middle School after the alleged incident.

Accordingly, viewed in the light most favorable to Plaintiff, as is required on a motion for summary judgment, the evidence reasonably supports the conclusion that Defendant Mitchell lacked arguable probable cause when he obtained the April 17, 2014 warrant against Plaintiff for recklessly endangering the students at Hayneville Middle School.  The court rejects the Magistrate Judge's conclusion to the contrary.  Further, based on the contradictory evidence in the record, the court finds no error in the Magistrate Judge's conclusion that a genuine dispute of material fact precludes a finding that Defendant Mitchell had probable cause for issuance of the warrant.

---

[15] The incident report attached to the warrant does not state that Plaintiff actually placed the janitor back at Hayneville Middle School, only that he decided to place the janitor at the school and then changed his mind after the student's mother complained.  The incident report also contains no facts to arguably support the conclusion that, on the day of the incident, Plaintiff endangered students by allowing the janitor to remain on school grounds after Plaintiff was informed of the student's allegations.  (Doc. # 46-11.)

Because the substantial evidence precludes a finding as a matter of law that Defendant Mitchell had either probable cause or arguable probable cause to obtain the April 17, 2014 warrant, Defendant Mitchell is not entitled to summary judgment

on Plaintiff's state law malicious prosecution claim arising from the April 17, 2014 warrant.

## B.  Plaintiff's § 1983 Malicious Prosecution Claim Against Defendant Mitchell

Plaintiff did not object to the Magistrate Judge's conclusion that the existence of arguable probable cause established, as a matter of law, that Defendant Mitchell was entitled to qualified immunity on Plaintiff's § 1983 malicious prosecution claim. However, at Defendant Mitchell's invitation (Doc. # 57 at 2-3), the court considered the validity of that finding.  Having rejected the arguable probable cause analysis, which formed the basis of the Magistrate Judge's qualified immunity analysis, the court also rejects the Magistrate Judge's conclusion that qualified immunity shields Defendant Mitchell from Plaintiff's § 1983 malicious prosecution claim arising out of the April 17, 2014 warrant. (Doc. # 57 at 2-3.)

## C.  Supplemental Jurisdiction over Remaining State Law Claims

Based on the Magistrate Judge's conclusion that Defendant Mitchell was entitled to summary judgment on Plaintiff's claims under federal law, including the § 1983 malicious prosecution claim, the Magistrate Judge recommended that,

pursuant to 28 U.S.C. § 1367(c)(3), the court should decline to exercise jurisdiction over Plaintiff's two remaining state law claims: Plaintiff's state law malicious prosecution claim against Defendant Mitchell and Plaintiff's negligence claim against Defendant Town of Hayneville.[16]  However, because the court rejects the Magistrate Judge's conclusion that summary judgment is due to be granted on Plaintiff's § 1983 malicious prosecution claim, declining supplemental jurisdiction over Plaintiff's remaining state law claims is inappropriate at this time.  *See* 28 U.S.C. § 1367(c)(3) (stating that a district court may decline to exercise jurisdiction over a supplemental claim if the court "has dismissed all claims over which it has original jurisdiction").

## D.    **Defendant Town of Hayneville's Objections**

In Count 9 of the Amended Complaint, Plaintiff asserts a claim of "negligence" against Defendant Town of Hayneville and other Defendants. Although, as the Magistrate Judge noted, the complaint could have been better drafted, the plain language of Count 9 seeks to hold Defendant Town of Hayneville on two distinct theories.

For his first negligence theory, Plaintiff seeks to hold Defendant Town of Hayneville liable for Defendant Mitchell's allegedly negligent acts in "the issuance

---

[16] The Magistrate Judge recommended entry of summary judgment as to all other state law claims.  Plaintiff did not object to the Recommendation.

and execution" of warrants for Plaintiff's arrest. (Doc. # 32 at ¶¶ 60-61.) Plaintiff further alleges that Defendant Mitchell acted with "negligence, want of skill, and/or carelessness" in obtaining the warrants. (Doc. # 32 at ¶¶ 60-61.) The Magistrate Judge concluded that summary judgment was due to be granted on this first negligence theory because Plaintiff abandoned the theory at the summary judgment stage. Plaintiff did not object to the Magistrate Judge's recommendation that summary judgment be granted as to this first negligence theory, and, on this point, the court finds no error in the Recommendation.

For his second negligence theory, Plaintiff seeks to hold Defendant Town of Hayneville liable on grounds that the mayor and city council members[17] acted with "negligence, want of skill, or carelessness" by negligently "supervis[ing], monitoring, and reinstating [Defendant] Mitchell after he was suspended." (Doc. # 32 at ¶ 61.) Defendant Town of Hayneville argues that the Magistrate Judge erred in construing the complaint as containing this second theory, but the language of the complaint supports the Magistrate Judge's construction and is sufficient to have placed Defendant Town of Hayneville on notice of the theory. (Doc. # 32 at ¶ 61.)

Defendant Town of Hayneville argues that it cannot be held liable on the Plaintiff's second negligence theory because the Magistrate Judge described the

---

[17] Plaintiff did not object to the Magistrate Judge's recommendation that the council members are entitled to summary judgment on all claims.

theory as a theory of "direct" liability (Doc. # 54 at 32 n.13), and, under Ala. Code 1975 § 11-47-190, municipalities can only be held liable for the negligent acts of an "agent, officer, or employee of the municipality." Despite the Magistrate Judge's use of the term "direct liability" to describe Plaintiff's second negligence theory, Plaintiff clearly seeks to hold Defendant Town of Hayneville liable for the alleged negligence of its agent/officer (the mayor) in reinstating Defendant Mitchell after he was suspended for his plan to arrest Plaintiff Boyd at a Board of Education meeting. (Doc. # 32 at ¶61.) Further, as the Magistrate Judge noted elsewhere[18] in the Recommendation, some Alabama case law suggests that Alabama would recognize the tort of negligent hiring against a municipality so long as the person making the relevant hiring decision is not entitled to state agent or discretionary function immunity. (Doc. # 54 at 36.) *Ford v. City of Goodwater*, No. 2:12cv1094-MHT, 2014 WL 37857, at *8 (M.D. Ala. Jan. 6, 2014). Accordingly, Defendants have not demonstrated that Ala. Code 1975 § 11-47-190 precludes liability on Plaintiff's second negligence theory.

In conjunction with Defendant Town of Hayneville's insistence that Count 9 rests solely on *respondeat superior* liability for Defendant Mitchell's conduct,

---

[18] The Magistrate Judge separately analyzed and recommended entry of summary judgment on a different negligent hiring, training, and supervision claim that was premised on the theory that Defendant Town of Hayneville was negligent in its original decision to hire Defendant Mitchell because Defendant Mitchell allegedly had a history of domestic abuse and of and pulling a gun on a sheriff and threatening the sheriff's life. (Doc. # 54 at 30-31 & n.11.)

Defendant Town of Hayneville argues that Defendant Mitchell's state agent and discretionary function immunity must be imputed to Defendant City of Hayneville. However, this argument is misplaced because Defendant Town of Hayneville is incorrect in assuming that Plaintiff's negligence theory rests solely on the Town's liability for the conduct of Defendant Mitchell.

Defendant Town of Hayneville contends that it cannot be liable Plaintiff's second negligence theory because Plaintiff does not allege that the mayor acted negligently in reinstating Defendant Mitchell. However, in both his complaint and his response to the summary judgment motion, Plaintiff *did* contend that the mayor's negligence was responsible for Defendant Mitchell's reinstatement. (Doc. # 46 at 26-27; Doc. # 32 at ¶ 61.)

Defendant Town of Hayneville argues that, even if Plaintiff's second negligence theory is premised on liability for the mayor's decision to reinstate Defendant Mitchell, the mayor (and, in turn, Defendant Town of Hayneville) is entitled to state agent immunity.[19] (Doc. # 58 at 9.) Defendant Town of Hayneville's argument on this point is conclusory, was not raised in its summary judgment brief, and was not considered by the Magistrate Judge. (Doc. # 44 at 35.) Accordingly,

---

[19] "[State agent i]mmunity applies to employees of municipalities in the same manner that immunity applies to employees of the State." *City of Birmingham v. Brown*, 969 So. 2d 910, 916 (Ala. 2007). Nothing in this Memorandum Opinion precludes Defendant Town of Hayneville from asserting this immunity argument in the future, or Plaintiff from arguing that this immunity argument has been waived or is barred by estoppel.

Defendant Town of Hayneville's immunity argument does not provide grounds for rejecting the Recommendation.

Defendant Town of Hayneville points out an internal conflict in the Recommendation. In analyzing Plaintiff's negligence claim, the Magistrate Judge noted substantial evidence that the mayor was aware that Defendant Mitchell intended to arrest Plaintiff. As the Magistrate Judge also noted, Lowndes County District Judge Adrian Daniel Johnson testified that, prior to Defendant Mitchell's reinstatement, he personally informed the mayor that Plaintiff's arrest on a charge of reckless endangerment would be unsupported by probable cause. (Doc # 54 at 34.) The Magistrate Judge concluded that, in light of the mayor's differing account of his conversation with Judge Johnson, "as stated earlier [in the Recommendation,] whether the conversation between Mayor Lawrence and Judge Johnson led to the certain conclusion that there was no probable cause is in dispute due to the differing accounts of that conversation and [the mayor's] lack of legal training and expertise." (Doc. # 54 at 34.)

However, earlier in the Recommendation, in analyzing Plaintiff's § 1983 false arrest, false imprisonment, and inadequate monitoring and supervision claims against Defendant Town of Hayneville and Defendant Mitchell, the Magistrate Judge considered the conflicting testimony of Judge Johnson and the mayor and concluded that the mayor's "more succinct, rudimentary recollection of the

conversation" established that the mayor could not have foreseen that the decision to reinstate Defendant Mitchell would have led to an arrest without probable cause. (Doc. # 54 at 28.) In the context of Plaintiff's §1983 claims, the Magistrate Judge appears to have weighed conflicting evidence, made credibility determinations, and/or failed view the evidence and draw all reasonable inferences in Plaintiff's favor. The Magistrate Judge's analysis in the context of Plaintiff's § 1983 claim is incorrect because it is inconsistent with the standard of review on a motion for summary judgment.[20] *See Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000) ("In evaluating a motion for summary judgment under Rule 56(c) the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. Moreover, the court must avoid weighing conflicting evidence or making credibility determinations." (citations and internal quotation marks omitted)).

Having considered the inconsistencies in the Recommendation at Defendant Town of Hayneville's invitation, the court concludes that the Magistrate Judge was correct in concluding that, viewing the conflicting evidence in the light most favorable to Plaintiff, substantial evidence reasonably supports the conclusion that

---

[20] The error in the Magistrate Judge's rationale in the context of considering Plaintiff's § 1983 false arrest, false imprisonment, and inadequate monitoring and supervision claims does not necessitate rejection of the Magistrate Judge's Recommendation that those claims be dismissed on summary judgment. Plaintiff did not allege in the complaint or on summary judgment that Defendant Town of Hayneville's liability for those claims rested on the mayor's decision to reinstate Defendant Mitchell.

the mayor was on notice that, if reinstated, Defendant Mitchell would arrest Plaintiff without probable cause.

Accordingly, the court adopts the Recommendation that summary judgment be denied to Plaintiff's negligence claim against Defendant Town of Hayneville arising out of allegations that the mayor negligently reinstated Defendant Mitchell.

## II.    CONCLUSION

Except as otherwise indicated in this Memorandum Opinion, the Recommendation is due to be adopted. Accordingly, it is ORDERED that the Recommendation of the Magistrate Judge is ADOPTED IN PART AND REJECTED IN PART as follows:

1.    The motion for summary judgment (Doc. # 43) is GRANTED as to all claims against Defendants David Daniel, George Davis, Kim Payton, Sheryll Phipher, and Carole Scrushy in their individual and official capacities, and these Defendants are DISMISSED from this action.

2.    As to the following claims, Defendant Kelvin Mitchell's motion for summary judgment (Doc. # 41) is GRANTED IN PART, and summary judgment is entered in favor of Defendant Kelvin Mitchell and against Plaintiff Daniel Boyd:

a.    Counts 1 and 2, only to the extent asserted against Defendant Mitchell in his official capacity;

b.    all remaining federal claims (Counts 3-13);

c.      Count 14, only to the extent asserted against Defendant Mitchell in his official capacity; and

d.      all remaining state law claims (Counts 15-18).

In all other respects, Defendant Mitchell's motion for summary judgment (Doc. # 41) is DENIED.

3.      On the following claims, Defendant Town of Hayneville's motion for summary judgment (Doc. # 43) is GRANTED IN PART, and summary judgment is entered in favor of Defendant Town of Hayneville and against Plaintiff Daniel Boyd:

a.      all federal claims (Counts 1-7); and

b.      Count 9, only as to Plaintiff's first negligence theory seeking to hold Defendant Town of Hayneville liable for Defendant Mitchell's allegedly negligent act in "the issuance and execution" of warrants for Plaintiff's arrest; and

c.      all remaining state law claims (Counts 10-18[21]).

In all other respects, Defendant Town of Hayneville's motion for summary judgment (Doc. # 43) is DENIED.

**By separate order, a new trial date will be set for the remaining claims, which are as follows**:

1.      Against Defendant Mitchell in his individual capacity:

_____

[21] Count 18 does not contain allegations against Defendant Town of Hayneville.

a. Counts 1 and 2, which are consolidated into a single § 1983 malicious prosecution claim arising out of the procurement of the April 17, 2014 warrant; and

b. Count 14, a state law malicious prosecution claim arising out of the procurement of the April 17, 2014 warrant.

2. Against Defendant Town of Hayneville: Count 9, a state law claim for negligence on Plaintiff's theory that the mayor negligently rehired Defendant Mitchell after his suspension.

DONE this 14th day of September, 2017.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE